# In the United States Court of Federal Claims

No. 12-388C

(Filed: February 14, 2013)

| | |
|---|---|
| ************************************* * <br> 1200 SIXTH STREET, LLC, * <br> * <br> * <br> Plaintiffs, * <br> * <br> v. * <br> * <br> THE UNITED STATES, * <br> * <br> Defendant. * <br> * <br> ************************************* * | Breach of Contract Claim; Rule 12(b)(6) Motion to Dismiss; GSA Option Agreement to Purchase Real Property; Whether Option Was Ever Exercised. |

*Carl G. Becker,* Becker Law Firm, Rochester, Michigan, for Plaintiff.

*David S. Silverbrand*, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

On June 18, 2012, plaintiff 1200 Sixth Street, LLC filed a breach of contract claim against the United States in this Court. Plaintiff alleges that the General Services Administration ("GSA") breached a contract for the purchase of real property in Detroit, Michigan, and as a result, Plaintiff seeks $4.5 million in damages for the loss of property value and other costs.[1]

---

[1] In its complaint, Plaintiff also sought attorney's fees under the Equal Access to Justice Act ("EAJA"), a claim which it concedes was premature. See Pl.'s Resp. 1; 28 U.S.C. § 2412. Accordingly, this claim is not currently before the Court.

On August 17, 2012, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Court of Federal Claims ("RCFC") for failure to state a claim upon which relief can be granted. Plaintiff filed a response to Defendant's motion on September 18, 2012, and Defendant replied on October 2, 2012. Initially, this case was assigned to Judge Francis M. Allegra, but by mutual consent was transferred to the undersigned on January 7, 2013. The Court heard oral argument on January 30, 2013. After carefully reviewing the parties' filings, the Court concludes that Plaintiff has failed to allege sufficient facts to support its claim for breach of contract. Accordingly, Defendant's motion to dismiss is GRANTED.

Background

Plaintiff is a limited liability company with its principal place of business in Detroit, Michigan. Compl. ¶ 1. Plaintiff owns real property on the western edge of downtown Detroit, upon which there is a high rise office complex comprised of two towers and adjoining parking areas. Compl. ¶¶ 4-5. The building was vacant at the time of purchase except for the presence of telecommunication tower equipment operated by the Federal Aviation Administration ("FAA") and the Michigan State Police ("MSP"). Compl. ¶ 6. The FAA and the MSP had an express easement for their use of the building, which Plaintiff was obligated to honor. Compl. ¶ 6.

In 2005, the GSA sought to create new field offices for the Federal Bureau of Investigation ("FBI") and began soliciting bids for possible locations, including Detroit, Michigan. Compl. ¶ 7. Plaintiff's managing member, Sam Danou, attended a GSA conference regarding the sales process, and learned that the acquisition of any property would be made through an option agreement, assignable by the GSA to a third party developer. Compl. ¶¶ 8-9. Mr. Danou met with the GSA's project supervisor, Julie Hoffman, among others, and the parties began negotiating a deal. Compl. ¶¶ 10-12. After preliminary meetings and tests on the property, the parties executed a Real Estate Option Agreement ("Option Agreement") with an effective date of August 1, 2006. Compl. ¶¶ 16-19; Ex. E. Under the terms of the Option Agreement, the option was exercisable whether or not the GSA had selected a developer for the property. Compl. ¶ 21. Concurrently, the parties also drafted an unsigned Agreement for Purchase and Sale of Property ("Purchase Agreement"). Compl. ¶ 20; Ex. G.

The Option Agreement included an integration clause which provided that "the Option [Agreement] and its exhibits were the sole understanding between the parties." Compl. ¶ 25; see Ex. E ¶ 18. Under the Option Agreement, both Plaintiff and the GSA were "obligated to expend substantial amounts of money, time, effort and energy" in pursuing the project even though the GSA was not obligated to purchase the property until it exercised the option. Compl. ¶ 26; see Ex. E ¶ 12. According to Plaintiff, these obligations included employing an expert to prepare an environmental assessment, achieving due care activities, securing title insurance and surveys, securing state, county,

2

or city governmental approval for a Brownfield plan, street vacations, utility relocations, rezoning, site plan approval, special use permits and variances, and certain traffic studies if necessary.  Compl. ¶ 27; Ex. E ¶¶ 5, 6, 8, 11, 12.  Ultimately, if the GSA elected to exercise the option, Plaintiff was required to deliver the property "free and clear of all liens and encumbrances whatsoever."  Ex. E ¶ 4.

Based upon "media disclosures" and the "conduct and activities of the GSA in approving the content of such disclosures" in the summer of 2006, Plaintiff believed the exercise of the option to be imminent.  See Compl. ¶ 32; Exs. I & J.  The last major encumbrance remaining on the property was the communication tower equipment on the building, held under the express easement by the FAA and the MSP.  See Compl. ¶ 6; Pl.'s Resp. 4.  Therefore, to fulfill the terms of the Option Agreement, Plaintiff's lawyer sought a prospective commitment from the MSP for removal of the communication tower equipment earlier than permitted by the easement.  Compl. ¶ 33.  Plaintiff learned that such early termination would require an approximate 90-day notice and cost $114,000, information it then relayed to the GSA.  Compl. ¶¶ 33, 34.

Up until this point, the GSA's Ms. Hoffman and Plaintiff had communicated much of the "required performance due from each other under the Option" by email.  Compl. ¶ 35.  On May 10, 2007, Ms. Hoffman instructed Plaintiff by email to "proceed with contacting the State regarding the 90-day notice for removal of the antennaes [sic]," referring to the communication tower equipment.  Ex. L.  In this email, Ms. Hoffman also noted the GSA's intent to further "discuss the assignable option" the following day, and said she would be in contact with Plaintiff the next week.  Ex. L; Compl. ¶¶ 38-39.  Plaintiff assumed that this email constituted the exercise of the option, and immediately proceeded to have the towers removed at the cost of $114,000.  Compl. ¶¶ 40-41.

By this time, however, the GSA had lost the only developer with which it had negotiated and, when it could not secure another acceptable developer, the GSA ended the deal with Plaintiff in August 2008.  Compl. ¶¶ 61, 68.  Plaintiff was left with a "building that had remained unoccupied for [two] years . . . and had been left without maintenance, repair or ordinary upkeep."  Compl. ¶ 68.  Plaintiff claims the property depreciated by more than $4 million between the date of purchase and April 5, 2012, the date of a recent Michigan tax assessment.  Compl. ¶ 70; Ex. Q.

Plaintiff initially brought suit in the United States District Court for the Eastern District of Michigan, Southern Division, alleging claims of promissory estoppel and detrimental reliance, quasi contract, negligent misrepresentation, declaratory and injunctive relief, and attorney's fees under the EAJA.  Compl. ¶ 72; Ex. R at 5.  The district court granted the Government's motion to dismiss based on lack of subject matter jurisdiction due to sovereign immunity.  Ex. R at 20; Compl. ¶ 73.  Plaintiff has since filed its claim in this Court, and now alleges breach of contract and seeks attorney's fees

under the EAJA.  Compl. ¶¶ 74-86.  Plaintiff demands $4.5 million in damages for its losses and other expenses incurred.

## Discussion

### I. Standard of Review

In reviewing Defendant's motion to dismiss pursuant to RCFC 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a plaintiff need only show "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### II. Analysis

The crux of Plaintiff's argument is that the Government elected to exercise its option through the email sent by Ms. Hoffman to Plaintiff's attorney on May 10, 2007.  See Compl. ¶¶ 40, 47-48; Ex. L.  Based on this email, Plaintiff contends, the Government thereby entered into a contract to purchase the property and has since breached that contract. Compl. ¶¶ 74-82.  In contrast, Defendant asserts that there was no contract that could have been breached, as Plaintiff does not allege sufficient facts to find that the GSA exercised its right under the Option Agreement, or that the proposed Purchase Agreement was ever signed.  See Def.'s Mot. 5-7. The Court agrees with Defendant that the facts alleged are insufficient to demonstrate the existence of a contract and, therefore, there can be no breach.

When contract language is unambiguous on its face, the plain language of the contract controls.  Hunt Constr. Grp., Inc. v. United States, 281 F.3d 1369, 1373 (Fed. Cir. 2002).  Courts should look to the plain language of the contract to resolve any questions of contract interpretation.  Aleman Food Servs., Inc. v. United States, 994 F.2d 819, 822 (Fed. Cir. 1993).  When a contract term is unambiguous, it cannot be assigned another meaning.  Triax Pac., Inc. v. West, 130 F.3d 1469, 1473 (Fed. Cir. 1997); see Allied Tech. Grp., Inc. v. United States, 39 Fed. Cl. 125, 138 (1997) (citation omitted), aff'd, 173 F.3d 435 (Fed. Cir. 1998) (Table) (noting that contract terms must be given the meaning that would be derived by a "reasonably intelligent person acquainted with the contemporaneous circumstances.").

Here, the Option Agreement provided for a "no-cost assignable option," and explicitly stated that if the "Optionee elects not to exercise the rights, option, or fee simple interests granted herein and to complete the purchase within the time *and in the manner* provided herein, then this Option shall terminate without further action or obligation on the part of either party." Ex. E ¶ 14 (emphasis added).  In order to have

exercised the option in accordance with the Option Agreement's terms, the GSA was required to serve "written notice on the [Plaintiff] in the manner prescribed in Section 20." Ex. E ¶ 2.  Section 20 of the Option Agreement required written notice to be served by "certified or registered, return receipt requested, postage prepaid, United States mail, personal delivery, or recognized, private, overnight courier."  Ex. E ¶ 20.

Plaintiff argues that Ms. Hoffman's email instructing Plaintiff to "proceed with contacting the State" of Michigan about removing the communication towers from its building constituted the exercise of the option by the GSA.  Compl. ¶ 40; Ex. L.  However, this email falls well short of the unambiguous exercise requirements contained in the Option Agreement.[2]  Plaintiff fails to allege any facts purporting to demonstrate that the GSA provided the required written notice in accordance with the contract terms.

Moreover, even assuming that the written notice requirements of the Option Agreement did not govern the election of the option, the Court cannot agree that Ms. Hoffman's email was "clear, precise and unequivocal."  Pl.'s Resp. 5.  Any acceptance of a contract must be positive and unequivocal to have effect, and any equivocation by the offeree in its purported acceptance will prevent the creation of the contract.  See 2 Richard A. Lord, Williston on Contracts § 6:10 (4th ed. 2012).  Here, the email does not purport to elect the option or to ratify the Purchase Agreement, and instead merely directs Plaintiff to contact the MSP regarding their aforementioned request of a 90-day notice for removal.  Furthermore, the email underscores the continued existence of the option when it states, "We are meeting internally tomorrow to discuss the assignable option and remaining items."  Ex. L.  At best, the meaning of the email is ambiguous.  Thus, regardless of Ms. Hoffman's authority to bind the GSA in contract, Plaintiff has not shown that her May 10, 2007 email binds the GSA to anything.  Plaintiff's claims sound more properly in tort, under theories of misrepresentation and detrimental reliance, which are not within the purview of this Court.  Although it may be unfortunate that Plaintiff suffered a financial loss, the incurred expenses were contemplated by the terms of the Option Agreement regardless of whether the GSA exercised the option.  Plaintiff has not alleged sufficient facts to support the existence of the contract, and therefore Plaintiff has no claim for breach of contract.

---

[2] Plaintiff argues that Paragraph 2 of the Option Agreement, which defines the required method of notice, is merely an "optional" or "preferred choice" due to the use of the word "may."  Pl.'s Resp. 7.  The Court finds this argument without merit, as the contract terms plainly and unambiguously allude to the GSA's ability to exercise the option at its will within the specified time frame, and do not render the notice requirements themselves optional.  See Def.'s Reply 3; Triax Pac., Inc., 130 F.3d at 1473 (noting that when a contract term is unambiguous, it cannot be assigned another meaning, no matter how reasonable that other meaning may be).

<u>Conclusion</u>

For the foregoing reasons, the Court hereby GRANTS Defendant's Rule 12(b)(6) motion, and dismisses Plaintiff's complaint without prejudice.

IT IS SO ORDERED.

<u>s/  Thomas C. Wheeler</u>
THOMAS C. WHEELER
Judge
